IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PYROTECHNICS MANAGEMENT, INC., | ) |
| Plaintiff, | ) Civil Action No. 2:19-cv-00893-RJC |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| XFX PYROTECHNICS LLC and fireTEK, | ) |
| Defendants. | ) |

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
### MOTION FOR PRELIMINARY INJUNCTION

Plaintiff, Pyrotechnics Management, Inc. (hereinafter "Pyrotechnics") by its counsel, Dentons Cohen & Grigsby P.C., files the following Brief in Support of its Motion for Preliminary Injunction pursuant to Federal Rule of Civil Procedure 65 against Defendants XFX Pyrotechnics LLC ("XFX") and fireTEK.

### I.     INTRODUCTION

On January 23, 2019, fireTEK, a Romanian pyrotechnics company, began posting on Facebook, YouTube, and several fireworks forum websites, asserting claims concerning a "new" router that it had released.  A fundamental claim of fireTEK for its new product was that it had the capability to control FireOne field modules, a product that is manufactured and sold by Pyrotechnics, an unrelated company that is a world leader in the pyrotechnics industry.  fireTEK even released a video on YouTube demonstrating this control feature.  According to fireTEK, pyrotechnicians who purchase the fireTEK router can combine it with FireOne field modules to control fireworks displays.  Using the fireTEK Router in this way would avoid the need to purchase the FireOne control panel that was originally designed to control FireOne field module while simultaneously artificially providing an entre into FireOne's client base.

It is clear that the fireTEK Routers infringe upon Pyrotechnics' copyrighted FireOne command/control protocols ("the Protocols") because those protocols are unique to the functionality of FireOne field modules. In other words, the Protocols serve as unique keys that cause FireOne field modules to execute selected, predetermined functions. Without the Protocols, the FireOne field modules will not execute those functions or, indeed, will not execute any function. Thus, if the fireTEK Routers did not incorporate Pyrotechnics' Protocols, they could not communicate with FireOne field modules in the manner demonstrated in the YouTube video. The FireOne Protocols are copyrighted works that are owned by Pyrotechnics and that have been registered in the U.S. Copyright Office, Registration Number TX 8-738-709. As copyright owner, Pyrotechnics has the exclusive rights to import, copy, distribute, use and sell the FireOne Protocols.

Pyrotechnics, a company based in State College, Pennsylvania, learned that fireTEK was working with XFX, a Pennsylvania-based company that is managed by Ralph Piacquadio ("Piacquadio"). XFX is the "official distributor" of fireTEK's products within the United States and Canada. As a pyrotechnician, Piacquadio had frequently used Pyrotechnics' FireOne firing system, and had choreographed fireworks displays for many of Pyrotechnics' clients.

fireTEK and XFX are now importing, distributing and selling fireTEK Routers that incorporate or reproduce the Protocols to communicate with FireOne field modules. Their importation, distribution and sale of the fireTEK Routers includes the importation, distribution and sale of the FireOne' copyrighted Protocols. Pyrotechnics has not granted fireTEK or XFX any authority to copy, import, distribute, use or sell the copyrighted Protocols. Thus, fireTEK and XFX'x copying, importation, distribution and sale of fireTEK Routers infringes Pyrotechnics' copyrights in the Protocols.

fireTEK and XFX are using their infringement of the FireOne Protocols to disrupt Pyrotechnics' business. Their infringing use of the FireOne Protocols enables fireTEK Routers to cooperate with FireOne field modules. Absent infringing use of the Protocols, the fireTEK Routers could not cooperate with FireOne modules.

Equity does not countenance a violation of copyright law whereby fireTEK and XFX can unlawfully incorporate Pyrotechnics' copyrighted Protocols to enable functionality that their products would not have otherwise – namely, the capability to cooperate with FireOne field modules. In this way, fireTEK and XFX are resorting to copyright infringement to acquire as customers users of FireOne field modules – customers that they could not have or serve without such copyright infringement. Accordingly, Pyrotechnics requests that this Court enjoin Defendants from any further importation, distribution, or sale of any products that infringe upon Pyrotechnics' copyrighted software.

## II.     FACTUAL BACKGROUND

Plaintiff Pyrotechnics manufactures digital pyrotechnic firing systems, and has been a world leader in the pyrotechnics industry for nearly twenty-five years. (Complaint ¶ 14.) Pyrotechnics manufactures and sells its pyrotechnic firing systems under the brand name of FireOne, also commercially referred to as "F1" in the pyrotechnics community. (*Id.* ¶ 15.) The FireOne digital pyrotechnic firing system is sophisticated equipment that allows an operator to control elaborate fireworks displays. (*See id.* ¶¶ 16-19.)

The FireOne field module is one of the products that is a component of the FireOne firing system. (*Id.* ¶ 16.) The FireOne field module is used for remote ignition of pyrotechnic products. (*See id.* ¶¶ 17-18) The FireOne field modules are programmed to be responsive to FireOne's command/control protocol (the "Protocol"). (*Id.* ¶ 17.) The Protocol enables wireless

communication between a FireOne control panel and the FireOne field module and instructs the field module to execute predetermined functions according to the Protocol. (*Id.* ¶ 18.) When pyrotechnic products such as fireworks are electrically connected to the FireOne field module, a pyrotechnician can use the FireOne control panel to remotely ignite the connected products. (*Id.* ¶¶ 18-19.) The Protocols are protected by U.S. copyright law and registered with the Copyright Office under Registration Number TX 8-738-709. (*Id.* ¶ 21.)

fireTEK, a Romanian company, also manufacturers digital pyrotechnics firing systems in competition with Pyrotechnics. (*Id.* ¶¶ 4, 6.) fireTEK developed the infringing fireTEK Routers in conjunction with Ralph Piacquadio, the managing member of XFX. (*Id.* ¶ 33) Piacquadio, on behalf of XFX, procured specimen FireOne products for the benefit of fireTEK. (*Id.* ¶ 34.) fireTEK procured and used those FireOne products to identify and copy the FireOne Protocols and unlawfully use the Protocols in its fireTEK Routers. (*Id.*) XFX then imported, distributed and sold the fireTEK Routers in the United States and Canada. (*Id.* ¶¶ 33-37.) As a pyrotechnician, Piacquadio had frequently used Pyrotechnics' FireOne firing system to choreograph fireworks displays for many of Pyrotechnics' clients. (*Id.* ¶ 34.) XFX claims to be the "Official Distributor" of fireTEK products within the United States and Canada. (*See id.* ¶ 36.)

Beginning on or around January 23, 2019, fireTEK began advertising new fireTEK Routers that it claimed are capable of controlling Pyrotechnics' FireOne field modules (the "fireTEK Routers"). (*Id.* ¶ 25.) On January 23, 2019, fireTEK posted about the fireTEK Routers on several websites, including the fireTEK Facebook® page, the UK Fireworks Forum, and pyrofan.com, among others. (*Id.* ¶ 25.) Each of fireTEK's posts boasted that its new product "[c]an direct control F1 modules (no need F1 panels – it can replace it and add more

useful features to end users" and that the "fireTEK router can control up to 50 F1 modules." (*Id.* ¶ 26 & Ex. B.) When one user on pyrofan.com responded to the post requesting the price of the new fireTEK Routers, fireTEK responded, "[a]s price it will start from 1500 to 2000 depending on the options you want to add: GPS and DMX. And if you pay only 400(500 with internal audio player and 55 0 with time code also) more for a fireTEK remote you can wireless control your F1 modules with centralized and local error reports and even with possibility to local control of each F1 router. Think about how much it cost a F1 wireless solution and it is not so good like fireTEK wireless." (*Id.* ¶ 27 & Ex. B.) These posts also embed a video posted by fireTEK owner Laurian Antoci on youtube.com, also uploaded on January 23, 2019, which demonstrates a fireTEK router controlling a FireOne field module (the "YouTube Video"). (*Id.* ¶ 28 & Ex. C.) The YouTube Video again acknowledged in the description of the video that "[t]his device can direct control F1 modules and replace F1 panels and add more useful features to your F1 system." (*Id.* ¶ 29 & Ex. C.)

In order to control the FireOne field modules, the fireTEK Routers must incorporate the copyrighted Protocols. (*Id.* ¶ 30.) Put another way, without the FireOne Protocols, the fireTEK Routers would be unable to communicate with and control the FireOne field module as shown in the embedded YouTube Video. (*Id.* ¶ 31.) Pyrotechnics has never authorized fireTEK to copy, distribute, sell or use the FireOne Protocols. (*Id.* ¶ 32.)

In fact, in response to cease and desist letters sent by Pyrotechnics in response to the infringement, the principal of fireTEK, Laurian Antoci, admitted to Mr. Daniel Barker, the owner of Pyrotechnics, that the Protocol had been taken from FireOne products and incorporated into fireTEK products. (*See id.* ¶ 41.) Further, Mr. Antoci told Mr. Barker that he intended to continue to copy, distribute, sell and use the Protocol in fireTEK products with no accounting to

5

Pyrotechnics. (*Id.*) Mr. Antoci further informed Mr. Barker that if Pyrotechnics brought any legal proceeding against fireTEK, Mr. Antoci intended to delay and forestall any final decision in such a proceeding for years and that, meanwhile, he would continue to copy, distribute, sell and use the Protocol throughout the course of the proceeding. (*Id.*)  Moreover, in July 2019, fireTEK and XFX again highlighted the fact that the fireTEK Routers were compatible with the FireOne field modules and could be used to "improve F1 capabilities" in an advertisement in a major U.S. pyrotechnics trade publication, in blatant disregard of the cease and desist letters. (*See id.* ¶¶ 42-43 & Ex. D.)

In November 2019, Plaintiff's expert witness Robert Capuro tested a fireTEK Router provided by Defendant XFX in expedited discovery. Counsel for all parties were invited to participate in the testing. As Mr. Capuro will testify to at the preliminary injunction hearing, that testing confirmed that fireTEK Routers contain an identical copy of Plaintiff's copyrighted FireOne command/control protocols.

### III.  DISCUSSION

In deciding a motion for preliminary injunction the following factors are relevant:  (1) likelihood of success on the merits; (2) likelihood that plaintiff will suffer irreparable harm if an injunction is not issued; (3) the effect of the injunctive relief on the defendant; and (4) the public interest.  *Reilly v. City of Harrisburg*, 858 F.3d 173, 176–177 (3d Cir. 2017), *as amended* (June 26, 2017) (collecting cases).

> [A] movant for preliminary equitable relief must meet the threshold for the first two "most critical" factors:  it must demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not) and that it is more likely than not to suffer irreparable harm in the absence of preliminary relief.  If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested … relief.

*Id.* at 178–179. "District courts have the freedom to fashion preliminary equitable relief so long

as they do so by 'exercising their sound discretion.'" *Id*. Each of the factors supports entering a preliminary injunction in this case.

        **A.     Pyrotechnics Is Likely to Succeed on the Merits.**

In analyzing this factor, the plaintiff must demonstrate that its likelihood of success on the merits is significantly better than negligible, but a plaintiff need not establish that success on the merits is more likely than not. *Reilly*, 858 F.3d at 179 (*quoting Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011) (en banc)). "A district court need only determine that the moving party would likely succeed on one claim to issue injunctive relief." *Johnson v. Wetzel*, 209 F. Supp. 3d 766, 775 (M.D. Pa. 2016). Pyrotechnics is likely to succeed on its claim for copyright infringement, and as such, has satisfied this factor of the analysis.

To succeed on the merits of its copyright infringement claim, Pyrotechnics must demonstrate "(a) ownership of a valid copyright and (b) unauthorized copying of original elements of the plaintiff's work." *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 212 (3d Cir. 2002) (citing *Whelan Assocs., Inc. v. Jaslow Dental Laboratory, Inc.*, 797 F.2d 1222, 1231 (3rd Cir. 1986)). Pyrotechnics can establish the first element, as it owns a valid copyright in the FireOne command/control Protocol which is duly registered with the Copyright Office. (*See* Complaint, Ex. A.)

"Copying is a shorthand reference to the act of infringing any of the copyright owner's five exclusive rights set forth at 17 U.S.C. § 106." *Id.* (citation omitted). Those exclusive rights include "the right to reproduce the copyrighted work, the right to prepare derivative works from the copyrighted work, and the right to distribute copies… of the copyrighted work to the public by sale.…" 17 U.S.C. § 106. Here, the fireTEK Routers manufactured, distributed, and sold by Defendants contain or generate copies of the copyrighted FireOne Protocols. This means that the

Defendants' protocols are either unlawful copies or unlawful derivative works. *See Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 212 (3d Cir. 2002) (concluding that defendants' software was an infringing derivative work where defendant's software included plaintiff's copyrighted computer code). If the fireTEK Routers did not include or produce the Protocols, they would be unable to control Pyrotechnics' FireOne field modules, as demonstrated in the YouTube video posted by fireTEK owner Laurian Antoci on January 23, 2019, and Mr. Antoci has admitted as much to Pyrotechnics' owner. Expedited discovery allowing Pyrotechnics' expert witness to inspect and test the fireTEK Routers has also confirmed that the fireTEK Routers incorporate and unlawfully copy Pyrotechnics' Protocols. Therefore, Pyrotechnics is also able to demonstrate unauthorized "copying" by Defendants.

  **B.** **Pyrotechnics Will Suffer Irreparable Harm if a Preliminary Injunction Does Not Issue.**

In a copyright infringement action, a showing of a likelihood of success raises a presumption of irreparable harm. *See CMM Cable Rep.*, 870 F. Supp. at 639 (citing *Marco v. Accent Publ'g Co.*, 969 F.2d 1547, 1553 (3d Cir. 1992)). Thus, the Court need not consider this prong of the preliminary injunction inquiry if it finds that Pyrotechnics is likely to succeed on the merits of its copyright infringement claim.

In any event, Pyrotechnics has already suffered and will continue to suffer irreparable harm if a preliminary injunction does not issue. As will be demonstrated at the preliminary injunction hearing, Pyrotechnics invested substantial time and money to develop the Protocols. fireTEK copied the Protocols and incorporated them into its own fireTEK Routers. fireTEK and XFX then marketed the fireTEK Routers to Pyrotechnics' customers, claiming that they are capable of effectively communicating with FireOne field modules, and that there is no longer a need to purchase FireOne's more expensive control panels. When Pyrotechnics' customers are

persuaded to purchase the infringing fireTEK Routers on the basis that they can control Pyrotechnics' equipment, there is a direct loss to Pyrotechnics.  Moreover, loss of substantial sales will diminish Pyrotechnics' competitive position in the market and the substantial investment it made in developing the Protocols will be irretrievably lost.  *See Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1254 (3d Cir. 1983) (citation omitted) ("[E]ven without the presumption of irreparable harm generally applied in copyright infringement cases, the jeopardy to [Plaintiff's] investment and competitive position caused by [Defendant's] wholesale copying of many of its key operating programs would satisfy the requirement of irreparable harm needed to support a preliminary injunction.").  Therefore, Pyrotechnics can demonstrate irreparable harm if an injunction does not issue.

        **C.**      **Defendants Will Not Be Harmed by the Grant of a Preliminary Injunction.**

Conversely, Defendants will not be harmed by the issuance of a preliminary injunction. "It is axiomatic that an infringer of copyright cannot complain about the loss of ability to offer the infringing product."  *See WPIX, Inc. v. ivi, Inc.,* 765 F. Supp. 2d 594, 621 (S.D.N.Y. 2011), *aff'd*, 691 F.3d 275 (2d Cir. 2012) (citing *Apple Computer*, 714 F.2d at 1255).  While fireTEK and XFX's businesses will be "harmed" by their inability to market or sell the infringing fireTEK Routers, that is not a legally recognized harm.  *See id.*  Defendants have no legitimate interest in selling products that infringe upon Pyrotechnics' copyright, and they can continue to sell other, non-infringing fireTEK products.  As such, Defendants' lawful business interests will not be harmed by the grant of a preliminary injunction, and the balance of the hardship weighs in Pyrotechnics' favor.

**D.     The Public Interest Supports an Injunction.**

In considering the relationship between the requested injunction and the interests of the public, the court is to look beyond the parties and focus on "specific, tangible effects on third parties." *Stilp v. Contino*, 629 F. Supp. 2d 449, 467 (M.D. Pa. 2009). "Since Congress has elected to grant certain exclusive rights to the owner of a copyright in a protected work, it is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work." *Apple Computer*, 714 F.2d at 1255. Therefore, the strong public interest in upholding copyright protection supports the issuance of preliminary injunction.

## IV.     CONCLUSION

WHEREFORE, Plaintiff Pyrotechnics Management, Inc., respectfully requests that the Court exercise its discretion to grant the Motion for Preliminary Injunction and enter an order enjoining Defendants from importing, distributing, or selling the infringing fireTEK Routers and such other relief that the Court deems to be just and appropriate.

        Respectfully submitted:

        DENTONS COHEN & GRIGSBY P.C.

        By: */s/ Kevin C. Harkins*
            Kevin C. Harkins (Pa. I.D. 59915)
            Fred L. Tolhurst (Pa. I.D. 22040)
            Lucy E. Hill (Pa. I.D. 323731)
            kevin.harkins@dentons.com
            fred.tolhurst@dentons.com
            lucy.hill@dentons.com

            625 Liberty Avenue
            Pittsburgh, PA 15222-3152
            Ph: (412) 297-4900 / Fax: (412) 209-0672

Dated:  May 28, 2020         Counsel for Plaintiff,
2975246.v1                       Pyrotechnics Management, Inc

## CERTIFICATE OF SERVICE

I hereby certify that, on the 28th day of May 2020, a true and correct copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION was filed and served via the Court's ECF system.

*/s/ Kevin C. Harkins*