IN THE UNITED STATES COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PYROTECHNICS MANAGEMENT, INC**, | CIVIL ACTION-LAW |
| Plaintiff, | Case No.: 19-cv-00893 |
| v. | Hon. Robert J. Colville |
| **FIRETEK**. | |
| Defendant. | **MOTION FOR SANCTIONS** |

## MOTION FOR SANCTIONS

Defendant fireTEK by and through counsel moves for the Court to order sanctions against Plaintiff and in support thereof averring as follows:

1. On March 12, 2021 Plaintiff sent discovery requests asking for a FTQ-16x64 module for testing.

2. Defendant made numerous requests asking when testing would take place before and after sending the FTQ16x64 module in order to schedule a representative to observe testing. Please see Exhibit A.

3. Defendant further requested that the module remained sealed until testing was to take place and then be re-sealed after testing had concluded. Defendant made this request as there are certain proprietary features of this module that Defendant intends to protect with a patent that are outside the scope of the issues involved in this case. The Court ordered this procedure be followed. (ECF 163)

4. Plaintiff filed a motion to compel production of the FTQ-16x64 and Defendant sent Plaintiff the module on June 14, 2021 in a special sealed bag. (Exhibit B)

5. The inspection of the module was held on July 27 at Plaintiff's headquarters. At the date of the inspection Defendant sent a representative to observe.

6. Defendant's representative observed that upon arriving for testing the module had been unsealed, meaning Plaintiff violated the Court's Protective Order (ECF 163) and had unfettered access to the module for an extended period of time. This situation was exactly what Defendant was trying to avoid in requesting a Protective Order from this Court.

7. Although the module should have been returned to Defendants after the testing (see ECF 163), it was kept by Plaintiff. Defendant is without knowledge exactly how long their competitors had unfettered access to their module.

8. At the conclusion of testing the module was placed in a sealed bag which was to remain sealed unless further testing was agreed upon by the Parties. (ECF 163)

9. Counsel for Defendant made numerous requests for return of the module. Please see Exhibit C. These requests were ignored by Plaintiff's counsel. Plaintiff's failure to return the module and keep it sealed is not their only violation of the Court's Protective Order.

10. Additionally, the Protective Order stated all sales documents produced by Defendant were to be for attorneys eyes only.

11. Counsel further violated the Protective Order (ECF 163) by displaying these documents on-screen at the Zoom deposition of Laurian Antoci, thereby giving Mr Barker, the owner of Pyrotechnics and third parties present at the deposition complete access to Defendant's customers and sales figures.

12. Plaintiff then asked for a stipulation regarding compatibility between the FTQ-16x64 and F1 Module. No stipulation was ever reached see Exhibit D. Further, even though Plaintiff filed a motion for sanctions to attempt to force product of the F1 Module, and this module was produced, Plaintiff never actually tested the module. It was just another part of their scheme to delay these proceedings and intimidate Firetek.

13. At a post discovery conference on November 17th the Court stated the module was to be returned in 10 days.

14. Counsel requested a photo of the module before it was sent to the Court in order to determine if it had been unsealed.

15. The photo clearly shows the module was removed from its sealed container in violation of this Court's Order. See Exhibit E.

16. On July 14 of 2020 Pyrotechnics started promoting a new product line with a feature known as a DMX Option. See Exhibit F.

17. Defendant had a competitive advantage over Plaintiff within their market as Defendant already had a product line featuring the DMX Option which was released in 2016. See Exhibit G.

18. Plaintiff started developing the DMX Option after this trial started. Their promotion of this feature can be found on their website, See Exhibit H. The development of this feature was also verified by one of Plaintiff's employees, Nathan Lasut. See Exhibit I.

19. This feature that Plaintiff is now promoting (which they subsequently claim to have invented) is identical to the feature that has been offered by Defendant since 2016. "Fully Integrated Field Modules With Simultaneous DMX Control". See Exhibit F and Exhibit H.

20. As Defendant has stated previously, the entire purpose of this litigation has been to provide Plaintiff with an unfair advantage in the fireworks firing system market. Plaintiff's bogus copyright and the instant litigation has been nothing more than a ploy to put Firetek out of business. It is believed and therefore averred that Plaintiff has used Firetek products in order to develop certain functionalities within their own products. (See Exhibit F and Exhibit H).

21. Plaintiff has availed themselves of an unfair advantage by unlawfully accessing Defendant's FTQ-16x64 and sharing confidential sales information that was ordered to be for attorneys eyes only. (ECF 163)

22. Additionally, on December 15, 2021 Pyrotechnics filed a motion to dismiss Defendant XFX from this case which was granted by the Court on December 16. Prior to filing this motion Plaintiff asked if Firetek would stipulate to dismissal. Firetek agreed to stipulate to dismiss of XFX provided that the Parties would provide an assurance that nothing in the

settlement agreement would restrict XFX from conducting business with Firetek in the future. Rather than respond to that request Plaintiff filed their motion. See Exhibit J.

    23. The only purpose of this litigation has been to provide Plaintiff with an unfair market advantage via unlawful access to Defendant's sales information, proprietary software and hardware and stopping Defendant from releasing a competitive product.

    24. Courts have inherent power to impose sanctions to protect the integrity of the judicial process. See Shepherd v. Am. Broad. Cos., Inc., 62 F.3d 1469, 1474-75 (D.C. Cir. 1995); Borum v. Brentwood Vill., LLC, 332 F.R.D. 38, 43 (D.D.C. 2019). A court may dismiss an action "because of a party's failure to comply with court orders." See Bristol Petroleum Corp. v. Harris, 901 F.2d 165, 167 (D.C. Cir. 1990). Dismissal as a sanction is warranted when (1) there is clear and convincing evidence showing a violation occurred; and (2) a lesser sanction would not effectively punish and deter the misconduct. See Mikkilineni, 271 F. Supp. 2d at 154 (citing Shepherd, 62 F.3d at 1472). In its evaluation, a court may consider prejudice to the defendant, the effects of the plaintiff's misconduct on the judicial system, the need to deter the plaintiff's misconduct, and whether the plaintiff failed to comply with the order while aware of its consequences. Id. at 155. It does not need to try lesser sanctions before resorting to dismissal, but it does need to explain why lesser sanctions are inappropriate. Webb, 146 F.3d at 971-72; Shepherd, 62 F.3d at 1478.Stone v. U.S. Embassy Tokyo, Civil Action No.: 19-3273 (RC), 4 (D.D.C. Mar. 23, 2021) A litigant's willful disobedience of court orders—as opposed to inadvertent disobedience—supports dismissal. See Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 643 (1976); Marrocco v. Gen. Motors Corp., 966 F.2d 220, 224 (7th Cir. 1992) (affirming dismissal sanction because plaintiffs' "wilful and unexcused violations of the protective order" qualified as "contumacious conduct"). And ignoring warnings is evidence of willfulness. See Arias v. Dyncorp Aerospace Operations, LLC, 677 F. Supp. 2d 330, 332 (D.D.C. 2010). Here, the protective order emphasized that Stone could not disclose or distribute the protected material without prior authorization. Protective Order at 2. It even warned that a violation of its terms could result in dismissal or a contempt charge. Id. Stone v. U.S. Embassy Tokyo, Civil Action No.: 19-3273 (RC), 5 (D.D.C. Mar. 23, 2021) "In any event, when parties exploit the judicial process, a court may sanction conduct beyond the reach of other

rules. *Natural Gas Pipeline v. Energy Gathering, Inc.,* [2 F.3d 1397, 1407](#) (5th Cir. 1993)." *Allergan, Inc. v. Sandoz Inc.*

25. Defendant is uncertain how the Court's Orders have had value as Plaintiff has ignored them to their advantage routinely throughout this litigation including: unsealing Defendant's module twice, failing to return the module which they have now held since July 27th, sharing confidential sales information marked for attorneys eyes only and holding the module beyond the time frame allotted by the Court when this issue was brought to the Court's attention.

26. Plaintiff's continued failure to follow Court orders is ongoing, unethical and reprehensible. The only proper remedy is nothing short of dismissal of this action but in the alternative Defendant also respectfully requests that Plaintiff be required to donate $50,000 to a charitable human rights organization approved by the Court should Plaintiff prevail at trial.

Respectfully submitted,

s/Louis J. Kroeck
Attorney for Defendant Firetek

CERTIFICATE OF SERVICE

The undersigned does hereby certify that a copy of the within Motion was served to all counsel through the Electronic Case Filing System on this 24th day of December 2021.

**PYROTECHNICS MANAGEMENT, INC.**
Frederick L. Tolhurst, Lucy Hill, Kevin Harkins

(412) 297-4900
Cohen & Grigsby PC
625 Liberty Ave.
Pittsburgh, PA 15222-3152

Respectfully submitted,

s/Louis J. Kroeck
Attorney for Defendant Firetek